**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
SEAN D. WOODSON,              :
                              :   Civil Action No.
          Petitioner,         :   13-4098 (RMB)
                              :
     v.                       :
                              :
JAMES RUNYON,                 :   **O P I N I O N**
                              :
          Respondent.         :
_____:

**Bumb**, District Judge:

   This matter comes before the Court upon Plaintiff's submission of a civil complaint and an application to proceed in this matter in forma pauperis ("IFP"). See Dkt. Ents. 1 and 1-1. In light of: (1) Plaintiff's IFP statements; and (2) what appears to be the absence of three disqualifying "strikes," the Court will grant Plaintiff IFP status and, for the reasons detailed below, will dismiss the complaint for failure to state a claim upon which relief can be granted.[1]

___

   [1] It appears that, in addition to his criminal prosecution conducted in the United States District Court for the District of Delaware, see USA v. Woodson, Crim. No. 09-0117 (LPS)(D. Del.), Plaintiff has been a party to civil actions of trial and appellate levels in Woodson v. Payton, Civil No. 12-0302 (SLR) (D. Del.), and USCA Index No. 12-2989 (3d Cir.), where the District of Delaware dismissed his claim as frivolous, and the Court of Appeals affirmed upon considering Plaintiff's claims under 28 U.S.C. § 1915(e)(2)(B) but not relying expressly on that provision for the affirmance. See Woodson v. Payton, 503 F. App'x 110 (3d Cir. Nov. 2, 2012). Yet, the Court of Appeals in

As noted supra, Plaintiff has been criminally prosecuted in the District of Delaware. See Woodson v. Payton, Civil No. 12-0302 (SLR) (D. Del.). That prosecution came about when, "[i]n the spring of 2009, [a] Delaware Probation . . . Officer [handling Plaintiff's probation] discovered that there was an active warrant for [Plaintiff's] arrest issued by the State of Maryland . . . [Upon such discovery, the Probation Officer] took [Plaintiff] into custody [and] conducted a . . . search [which revealed] pills . . . [of] a controlled substance [that were concealed on Plaintiff's body and, in addition,] a loaded .357 revolver [that was found in Plaintiff's car]." Id. at *2.

Plaintiff was thereafter indicted and convicted for being a felon in possession of a firearm. ("Original Delaware Trial"). See id. at *3.

On August 5, 2011, however, the court granted Plaintiff's motion for a new trial on the grounds that the court had responded to the jury's message out of the presence of Plaintiff

---

Woodson v. Payton noted that Plaintiff had another civil action of trial level dismissed under Section 1915(e)(2)(B). See id. at 110, n.2 (citing Woodson v. Payton, Civil No. 10-0925 (D. Del.)). Thus, it is certain that, as of now, Plaintiff has accrued at least two "strikes" within the meaning of 28 U.S.C. § 1915(g), even if the dismissal of his appeal in USCA Index No. 12-2889 cannot qualify as a "strike." See Byrd v. Shannon, 715 F.3d 117 (3d Cir. 2013). Out of abundance of caution, this Court will grant Plaintiff IFP status for the purposes of the instant matter. However, the Court's instant dismissal of Plaintiff's complaint adds the third "strike" within the meaning of Section 1915(g).

and his counsel. USA v. Woodson, 2013 U.S. App. LEXIS 231, at *2. The Government appealed that order, and the Court of Appeals issued an affirmance dated January 4, 2013, see id. at *6. Plaintiff was indicted again in April 2013. See USA v. Woodson, Crim. No. 09-0117 (LPS) (D. Del.); see also Dkt. Ent. 1, at 2. That April 2013 indictment ("Grand Jury") is at the heart of the instant matter.

 Specifically, it appears that, sometime in July 2010 (that is, between his spring 2009 arrest and his Original Delaware Trial), Plaintiff had interactions with an individual, James Runyon ("Runyon"), the within Defendant.[2] See Dkt. Ent. 1, at 2. During those interactions, Plaintiff made oral and written statements to Runyon. See id. When Plaintiff's April 2013 re-indictment proceedings got underway, Runyon was either subpoenaed or invited to testify -- as Plaintiff's witness. However, the testimony Runyon provided was not favorable to Plaintiff: Runyon stated that Plaintiff tried to "corruptly persuade[]" him to testify in Plaintiff's favor, and that these attempts were made "with intent to [unduly] influence [Runyon's] testimony." Id.[3]

---

[2] It appears that Runyon is also an inmate and, for a certain period of time, Plaintiff and Runyon were incarcerated at the same correctional facility.

[3] The Government asserts that Plaintiff's interactions with Runyon amounted to witness tampering, since, according to the Government,

 On the night before the trial, a witness subpoenaed by

Now, Plaintiff claims that Runyon's Grand Jury testimony:

> resulted in Plaintiff[']s incarceration, loss of property (mortgaged home, four vehicles, incorporated business of which Plaintiff was sole proprietor, contents of mortgaged home, etc.) totaling over $75,000, Plaintiff having to prepare a legal defense against [Runyon's] allegations to the grand jury . . . and Plaintiff's physical abuses sustained while incarcerated.

Id. at 3.

While, as the foregoing reveals, Plaintiff seeks damages, he does not assert that Runyon's Grand Jury testimony violated Plaintiff's civil rights.  See, generally, Dkt. Ent. No. 1.

---

> [Plaintiff], James Runyon, requested to speak with the government.  During an interview that evening by . . . Special Agent Thomas Hoffman, Mr. Runyon revealed that [Plaintiff] had asked Mr. Runyon to testify to a story that was false.  Mr. Runyon further provided the government with two letters [Plaintiff] had written Mr. Runyon in which [Plaintiff] detailed the false story that Mr. Runyon was supposed to tell the jury.  In the letters, [Plaintiff] laid out in question-and-answer format the story as Mr. Runyon was expected to testify. Specifically, Mr. Runyon was supposed to testify that he was with [Plaintiff] on the day of [Plaintiff's] arrest, and that [Plaintiff] was the passenger in the Chevrolet Celebrity, with another man driving.  If true, this story could corroborate [Plaintiff's] argument that he was not in sole possession of the [vehicle in which the loaded .357 revolver was found by Plaintiff's probation officer.]  However, the story was not true.  In fact, Mr. Runyon did not meet [Plaintiff] until the two were incarcerated together in August 2010, and therefore Mr. Runyon certainly was not with [Plaintiff] on October 8, 2009.

USA v. Woodson, Crim. No. 09-0117 (LPS) (D. Del), Dkt. Ent. No. 362, at 2.

Rather, Plaintiff maintains that Runyon's testimony was a breach of a certain written agreement executed between Plaintiff and Runyon in 2010.  See id. at 1.  Apparently, while still facing his Original Delaware Trial, Plaintiff had Runyon sign a document titled "Agreement of Acquaintance."  Dkt. Ent. 1, at 8-9.  That document reads, in its entirety, as follows:

> I, James Runyon, hereby acknowledge and agree that each and every sentiment and concept expressed by [Plaintiff], either in or out of [Runyon's] direct presence, either verbally, tacitly, written, or otherwise conveyed by [Plaintiff] for the sole purpose of [Runyon's] and other's in [Runyon's] vicinity's entertainment, from the inception of [Runyon's] and [Plaintiff's] acquaintance and its entire duration.  At no time will [Runyon] accept anything [Plaintiff] conveys, in any way [Plaintiff] conveys it, as truth or fact, or interpret it as that of a serious nature; no matter what context or venue a particular sentiment or concept is expressed in.  Further, [Runyon] will not relate any sentiment or concept expressed by [Plaintiff] during [his and Plaintiff's] acquaintance as being truth or fact, or of a serious nature, to any other party, either real or fictitious.  The inception of [Plaintiff's] and [Runyon's] acquaintance was promulgated on approximately June 2010.  Therefore, all interaction, either direct or indirect, between [Runyon] and [Plaintiff] after the aforesaid date is subject to the foregoing acknowledgment and agreement.  I, James Runyon, also declare that I was not coerced in any way into entering into the foregoing agreement.  Declaration Under Penalty of Perjury.  I, James Runyon, hereby declare pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct, and that [Runyon[ will abide by concepts therein in all instances of [Runyon's] existence, and that [Runyon] fully understand[s] that if any of the foregoing statements are willingfully [sic] false then [Runyon is][ subject to the penalties of perjury of the United States, and subject to civil action.  [Signatures, date.]

Id.[4]

    Plaintiff, therefore, seeks to invoke this Court's diversity jurisdiction so to sue Runyon for "violat[ing] the terms of the [above-quoted] contract," i.e., for testifying before Plaintiff's Grand Jury. Id. at 1-2. That claim is without merit.[5]

    To start, this Court seemingly lacks proper jurisdiction over this matter.[6] Here, Plaintiff states that he has been "a

---

[4] Meanwhile, in his District of Delaware criminal proceedings, Plaintiff has made applications seeking suppression and exclusion of Runyon's testimony for the purposes of Plaintiff's re-trial. See USA v. Woodson, Crim. No. 09-0117 (LPS) (D. Del.), Dkt. Ents. No. 339 and 363.

[5] Plaintiff's current position is that Runyon was contractually obligated to remain silent. However, that position appears incompatible with Plaintiff calling Runyon as Plaintiff's Grand Jury witness. Thus, Plaintiff's actual claim would be better defined as an assertion that Runyon breached the agreement by testifying against rather than in favor of Plaintiff.

[6] Federal courts are obligated to determine whether they have jurisdiction even if no party to an action has challenged the same. See Packard v. Provident National Bank, 994 F.2d 1039 (3d Cir.), cert. denied sub nom. Upp v. Mellon Bank, N.A., 510 U.S. 964 (1993). "[A] plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court . . . must dismiss the case, unless the defect be corrected by amendment." Smith v. McCullough, 270 U.S. 456, 459 (1926). Federal courts have the mandate to exercise: (a) federal question jurisdiction over the "issues arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; and (b) diversity jurisdiction over disputes between citizens of different states. See 28 U.S.C. § 1332. A diversity claim requires a showing of complete diversity in the sense that "no plaintiff can be a citizen of the same state as any of the defendants." Midlantic Nat'l Bank v. Hansen, 48 F.3d 693 (3d Cir. 1995). As a matter of judicial gloss, this formulation means that plaintiff (as the party asserting federal jurisdiction) "must specifically allege each party's citizenship,

current resident" of the Commonwealth of Pennsylvania starting April 2011.  Dkt. Ent. 1, at 1.  Yet, the fact that Plaintiff is – and has been, for the last two years – an inmate housed at the Federal Detention Center in Philadelphia, Pennsylvania, does not supply Plaintiff with Pennsylvanian domicile.  "For inmates, citizenship for diversity purposes is the state in which the inmate was domiciled prior to incarceration, unless the inmate [establishes domicile by showing contacts and the intent to remain] elsewhere when he is released[,] in which event citizenship would be that state."[7]  McCracken v. Murphy, 328 F. Supp. 2d 530, 532 (E.D. Pa. 2004) (citing Flanagan v. Shively,

---

and these allegations must show that the plaintiff and defendant are citizens of different states."  American Motorists Ins. Co. v. American Employers' Ins. Co., 600 F.2d 15, 16 (5th Cir. 1979); see also Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co., 224 F.3d 139, 141 (2d Cir. 2000) ("The failure to allege [the party's] citizenship in a particular state is fatal to diversity jurisdiction").

[7]  For purposes of determining diversity, state citizenship is equated with domicile.  See Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972); Parr v. Grenko, 1993 U.S. Dist. LEXIS 9122, at *3 (E.D. Pa. Jul. 9, 1993).  Domicile, however, is not necessarily synonymous with residence; one can reside in one place and be domiciled in another.  See id.  Residence and an intent to make the place of residence one's home are required for citizenship and to establish a new domicile.  See id.  Although the analysis is necessarily case specific, courts have looked to certain factors, including state of employment, voting, taxes, driver's license, bank accounts and assets, and civic and religious associations in determining the citizenship of an individual.  See Federal Practice & Procedure § 3612, at 530-31; see also Juvelis v. Snider, 68 F.3d 648, 654 (3d Cir. 1995); Krasnov, 465 F.2d at 1301; Connors v. UUU Prods., 2004 U.S. Dist. LEXIS 6417, at *8 (E.D. Pa. Mar. 15, 2004).

783 F. Supp. 922, 935 (E.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992)).  Here, Plaintiff has shown no ties with Pennsylvania.  Thus, he had not met his burden of establishing his domicile.  Moreover, this Court, upon conducting its own research, located a certain James H. Runyon serving his state sentence in New Jersey, see https://www6.state.nj.us/DOC_Inmate/details?x=1234269&n=0, but the Court has no assurances that the located inmate is the Defendant, or that inmate is domiciled in New Jersey.  Indeed, it might be that neither Plaintiff nor Runyon is domiciled in Pennsylvania or in New Jersey, and they might not be diverse.  If so, this Court is without jurisdiction over this matter.

    Even if the Plaintiff could cure the jurisdictional deficiency, the Complaint is still subject to dismissal.  First, Runyon neither has, nor could have had any connection to the injuries Plaintiff has asserted in this matter, such as Plaintiff's incarceration, or his alleged loss of real estate and private property, or his alleged physical injuries sustained during incarceration, because the incarceration, the conditions of confinement, the alleged financial losses, and the like were a result of Plaintiff's arrest, conviction and imprisonment associated with the Original Delaware Trial, in which Runyon played no part.[8]

---

[8] To the extent Plaintiff strives to assert that his incarceration has been prolonged by Runyon's Grand Jury testimony, Plaintiff's position lacks basis in both facts and law

Moreover, if the Court were to factor out this shortcoming as well, Plaintiff's contractual claims are still are unenforceable for lack of consideration.  <u>See</u>, <u>e.g.</u>, <u>Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.</u>, 307 F.3d 197, 220 (3d Cir. 2002) (a trade contract for non-disclosure/confidentiality is not enforceable if the plain language of the agreement is silent as to the consideration given to the one who undertakes the confidentiality obligation); <u>accord</u> Restatement (Second) of Contracts § 71 (1981).  Furthermore, even if some form of a valid consideration could be fancied, the agreement is still unenforceable because it is void as against public policy.

While a confidentiality agreement can be used to safeguard such matters as trade secrets, the "whistleblower-type information about allegedly unlawful acts" does not fall into that category.  <u>See</u>, <u>e.g.</u>, <u>E.E.O.C. v. Astra U.S.A., Inc.</u>, 94

---

since – thus far – the District of Delaware presumed that Runyon's Grand Jury testimony would not have a substantial relevance to the charges prosecuted against Plaintiff in that matter.  <u>See</u> <u>USA v. Woodson</u>, Crim. No. 09-0117 (PSL) (D. Del.), Dkt. Ent. No. 351, at 11.  In addition, Plaintiff's claim for damages based on the prolongation of his incarceration is facially premature under the holding of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and it will remain premature until Plaintiff obtains a state-court or federal habeas ruling  establishing undue prolongation of his incarceration on the basis of Runyon's testimony.  <u>Accord</u> <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997) (claim for damages based on the prolongation of incarceration ensuing from on an undue denial of parole ripens only upon the entry of a favorable state-court or federal habeas ruling actually reducing the inmate's term of imprisonment by a specific period of time).

F.3d 738, 741 (1st Cir. 1996); Peterson v. Seagate, 534 F. Supp. 2d 996, 999-1000 (D. Minn. 2008); accord Von Kesler v. Baker, 131 Cal. App. 654 (1933)(if the contract tended to obstruct and impair the administration of justice, it was void as being contrary to public policy, even if it is in a setting of a civil trial); Wendt v. Walden Univ., 1996 U.S. Dist. LEXIS 1720 (D. Minn. Jan. 16, 1996); Kalinauskas v. Wong, 151 F.R.D. 363 (D. Nev. 1993); A foriori, a contract intended to bar a potential witness from testifying at any stage of a criminal proceeding is null and void ab initio, even if the contract itself fails to provide sufficient basis to the penal charge of witness tampering.[9]  See People v. Pic'l, 31 Cal. 3d 731 (Super. Ct. L.A., 1982) (since, under the state law, any person that promised to give any witness any bribe upon "understanding or agreement that such person shall not attend trial if called as a witness"

---

[9] Witness tampering is a crime. See 18 U.S.C. § 1512(b). Correspondingly, a contract openly pursuing the goal of witness tampering is necessarily void. See Restatement (Second) of Contracts § 178(1) and cmt. a; but see United States v. Farrell, 126 F.3d 484, 490 (3d Cir. 1997) (observing that, "[b]ecause the 'improper purposes' that justify the application of § 1512(b) are already expressly described in the statute, construing 'corruptly' to mean merely 'for an improper purpose'. . . renders the term surplusage, a result that we have been admonished to avoid" and holding, narrowly, that a person who persuades someone to invoke that someone's actually implicated Fifth Amendment right does not violate the statute).  Here, however, Plaintiff did not seek to encourage Runyon to invoke his Fifth Amendment right; rather, he expressly tried to silence Runyon.  Indeed, Runyon would have no basis to invoke the Fifth Amendment. Accord United States v. Kislyansky, 126 F. Supp. 2d 1076 (N.D. Ohio 2001).

is guilty of a felony, there could not be a *valid* "understanding or agreement" between the briber and the witness if they intended to enter into such a bargain); accord United States v. Sussman, 709 F.3d 155, 169 and n.15 (clarifying the holding of United States v. Davis, 183 F.3d 231 (3d Cir. 1999), by pointing out that only "an investigation simpliciter [by the executive branch agents] is not enough to trigger § 1503," while interferences with administration of justice within, for instance, the grand jury context, amounts to a violation of Section 1503) (citing United States v. Simmons, 591 F.2d 206 (3d Cir. 1979)); cf. 81 Am. Jur. 2d (Witnesses) § 67 ("[if] the contract offers enticement . . . tends . . . to pervert the course of justice, it is contrary to public policy and void"); Spillman v. First Bank of Nickerson, 114 Neb. 423, 430 (1926) ("If an agreement binds the parties or either of them to do, or if the consideration is to do, something opposed to the public policy of the state or nation, it is illegal and absolutely void, however solemnly made. . . . In other words, its validity is determined by its general tendency at the time it is made, and if this is opposed to the interests of the public it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case.  The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance") (citation omitted).

In conclusion, Plaintiff's agreement with Runyon is void and cannot be enforced. Correspondingly, his contractual challenges are without merit.[10] Finally, even if the Court were to stretch Plaintiff's claims and read them as a civil rights claim alleging that Runyon's grand jury testimony violated Plaintiff's rights, the complaint at bar would still have to be dismissed, because witnesses are absolutely immune from challenges based on their testimonies given during trial and pre-trial stages, including grand jury proceedings conducted in criminal actions. See Rehberg v. Paulk, 132 S. Ct. 1497 (2012); Kulwicki v. Dawson, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992). In other words, no matter how this Court were to construe the claims, Plaintiff's pleading fails to state a claim upon which relief can be granted.

Ordinarily, a plaintiff may be granted "leave [to amend,] .

---

[10] This Court need not reach the issue of whether Plaintiff's agreement with Runyon amounted to witness tampering: that issue is properly before Plaintiff's trial judge in the District of Delaware. Analogously, this Court need not reach the issue of whether Runyon's statements should be suppressed: that issue is too properly before Plaintiff's trial judge. Indeed, Plaintiff's instant action raises the very concerns that underlie the holdings of Heck and Balisok, since in this civil action Plaintiff strives to attack Runyon's past and upcoming testimony that the District of Delaware allowed in Plaintiff's criminal re-trial. Since Plaintiff's District of Delaware submissions (seeking suppression of Runyon's statements and opposing the Government's application for admission of evidence of witness tampering) were made on the very day when Plaintiff submitted for filing the complaint within, see Instant Matter, Dkt. Ent. 1; compare USA v. Woodson, Crim. No. 09-00117 (D. Del), Dkt. Ents. 360 and 362-66, this Court will direct the Clerk to serve a complimentary copy of this Opinion upon Hon. Leonard P. Stark, the judge presiding over Plaintiff's current re-trial.

12

. . . when justice so requires." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993). However, "[a]llowing leave to amend where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings" would frustrate the Court's ability to filter out lawsuits that have no factual basis. <u>Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.</u>, 394 F.3d 126, 164 (3d Cir. 2004) (internal quotation marks and citations omitted). Here, Plaintiff's allegations are as detailed as they are barren of a viable claim. Since Plaintiff would not be able to cure this core defect by repleading, no leave to amend is warranted.

For the foregoing reasons, Plaintiff's application to proceed in this matter <u>in forma pauperis</u>, Dkt. Ent. 1-1, will be granted. Plaintiff's Complaint, Dkt. Ent. 1, will be dismissed. Such dismissal will be with prejudice.

An appropriate Order follows.

<u>s/Renée Marie Bumb</u>
**Renée Marie Bumb**
**United States District Judge**

Dated: <u>July 11, 2013</u>